IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-cv-00882-MSK-STV

**ROBERT HAMILTON,**

Plaintiff,

v.

**IAN KEMPER,**

Defendant.

_____

**OPINION AND ORDER GRANTING MOTION TO ALTER JUDGMENT AND REOPENING CASE**
_____

**THIS MATTER** comes before the Court pursuant to Mr. Hamilton's Motion to Alter Judgment **(# 55)**, Mr. Kemper's response **(# 60)**, and Mr. Hamilton's reply **(# 61)**.

Mr. Hamilton was injured in an auto accident allegedly caused by Mr. Kemper, for which Mr. Hamilton asserts claims of negligence and seeks money damages. On October 17, 2017, Mr. Kemper's counsel filed a Notice of Death **(# 32)** stating that Mr. Kemper had died. The Notice was served only on Mr. Hamilton's counsel. Shortly thereafter, Mr. Kemper's counsel sought dismissal **(# 34)** of the claims, and the Court denied **(# 35)** that request, indicating that "Fed. R. Civ. P. 25(a) controls in the situation where a party has passed away." That Order also noted that "the rule requires the automatic dismissal of an action if no motion for substitution for the deceased party has been made within 90 days from the filing of a suggestion of death," but noted that that 90-day time limit had not yet expired.

1

On January 18, 2018, Mr. Hamilton's counsel moved **(# 45)** to substitute Commerce Insurance Company ("Commerce") – presumably Mr. Kemper's auto insurer -- as Defendant in place of Mr. Kemper.[1] The following day, Mr. Hamilton moved **(# 47)** for leave to file an Amended Complaint, one which named Commerce as the sole Defendant but otherwise differed little from the then-current Complaint.

On January 30, 2018, the Court denied **(# 49)** both of Mr. Hamilton's motions. Specifically, it found: (i) a sufficient notice of death (but not a motion for substitution) could by filed by counsel for a defendant, as occurred here; (ii) Mr. Hamilton's motion for substitution was untimely under Rule 25(a) and not subject to a finding of excusable neglect; (iii) even if the Motion to Substitute were timely, the substitution of Commerce for Mr. Kemper would require a refashioning of Mr. Hamilton's claims, such that Rule 25 was not the proper vehicle for accomplishing it; and (iv) Mr. Hamilton's request for leave to file an amended complaint naming Commerce as a party would be futile because the negligence claims previously asserted against Mr. Kemper – and which were unchanged in the Proposed Amended Complaint – would be futile if asserted against Commerce.

On February 9, 2018, Mr. Hamilton filed the instant Motion to Alter Judgment **(# 55)**. Mr. Hamilton argues that Mr. Kemper's Notice of Death was insufficient to start the Rule 25(a) clock running because it: (i) was not served on the successors or representatives of Mr. Kemper, and (ii) did not identify any successor to Mr. Kemper. *Citing Grandbouche v. Lovell*, 913 F.2d 835, 837 (10th Cir. 1990) *and Fahrenbacher v. Quackenbush*, 759 F.Supp. 1516, 1519 (D.Kan.

---

[1] Mr. Hamilton's counsel conceded that the motion was concededly filed one day after the expiration of the 90-day period, but argued that the situation was the result of law office oversight that constituted "excusable neglect."

1991).  Thus, Mr. Hamilton argues, because the 90-day period of Rule 25(a) has not yet begun to run, his motion to substitute is not untimely and should be granted.

Rule 25(a)'s 90-day clock is triggered by "service of a statement noting the death," but the rule does not specify who must (or may) make such a statement, what such a statement must contain, or whom it must be served upon.[2]

In *Grandbouche*, while appealing dismissal of his case on other grounds, the named plaintiff died.  The 10th Circuit reversed the trial court's dismissal and remanded the action.  Back in the trial court, the defendants moved to dismiss the action, noting that the period for seeking substitution under Rule 25(a) had run.  Immediately thereafter, the personal representative of the decedent moved to substitute himself as the plaintiff.  The trial court denied the motion to substitute and dismissed the case.  On appeal, the 10th Circuit reversed.  First, it found that no suggestion of death under Rule 25(a) had actually been made: the defendants argued that the suggestion of death was made by virtue of various orders and briefs filed in the initial appellate proceedings, but the 10th Circuit disagreed, finding that "mere reference to a party's death in court proceedings or pleadings is not sufficient to trigger" Rule 25(a)'s clock.  Second, it seemed to offer an alternative justification that would apply even if the orders and briefs in the appellate proceedings could suffice as a suggestion of death: it noted that although those orders and briefs were served on the parties and their counsel as part of the appellate proceedings, "the service required by Rule 25(a)(1) on nonparties, specifically the successors or representatives of the deceased party's estate, must be service pursuant to Fed. R. Civ. P. 4." 913 F.2d at 836-37, *citing Farris v. Lynchburg Foundry*, 769 F.2d 958, 961 (4th Cir. 1985) and Wright & Miller, Federal Practice and Procedure.  Numerous District Courts in the 10th Circuit

---

[2]  Rule 25(a)(3) dictates <u>how</u> the statement must be served – according to Fed. R. Civ. P. 4 if served on non-parties.

3

(including on at least one occasion, the undersigned) have construed *Grandbouche* to require the party suggesting death to serve that suggestion on the decedent's successors or representatives. *Johnson v. Thomas*, 2013 WL 4461747 (D.Colo. Aug. 20, 2013); *Gates v. Phillips*, 2012 WL 1278043 (Mar. 19, 2012); *Sanabria v. Sanabria*, 2009 WL 4730214 (D.Kan. Dec. 4, 2009).

Although *Grandbouche*'s reasoning is subject to criticism in certain respects, it does appear to embody the majority rule among the Circuits: that the suggestion of death must be served on the decedent's estate or personal representative, even if that representative has not yet been identified or appointed. *See Sampson v. ASC Industries*, 780 F.3d 679, 681 (5th Cir. 2015) ("Service of the notice of death on the personal representative for a deceased-plaintiff's estate is generally required, even where it is difficult to determine who the personal representative is"); *Farris*, *supra.* ("In some instances, it may prove more difficult to determine whom to serve, but it is generally appropriate to require the serving party to shoulder that burden, rather than permitting the absence of notice to decedent's representative to lead to forfeiture of the action"); *Atkins v. City of Chicago*, 547 F.3d 869, 873 (7th Cir. 2008) ("the cases are unequivocal that an obviously interested nonparty, such as Mrs. Atkins [the decedent plaintiff's spouse who had not yet petitioned for appointment as personal representative] must be served for the 90-day clock to start running"), *and cases cited therein*.

The minority rule seems to be that of the Second Circuit, expressed in *Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 470 (2d Cir. 1998). There, the court rejected an argument that a statement of death that failed to identify (and therefore, was not served upon) the decedent's estate or representative was insufficient to trigger Rule 25(a)(1). It noted that the majority rule's dilemma was premised upon situations where the decedent was the defendant and no representative was appointed; in such circumstances, the burden would be on the plaintiff to

4

"institut[e] machinery in order to produce some representative of the estate ad litem" in order to allow the case to proceed. The Second Circuit found that concerns were overstated, as a plaintiff in such circumstances could simply seek an extension of time to move to substitute under Fed. R. Civ. P. 6(b).

Although this Court finds *Unicorn Tales* persuasive in other respects, it finds this line of reasoning facile. It is clear that the interests to be apportioned under Rule 25(a) depend on which side of the case the decedent is on. When a plaintiff dies and the cause of action survives, the cause of action is potentially an asset that the decedent's estate will likely want to pursue. In such cases, there is little need to worry about delay in seeking appointment of a substitute plaintiff, as economic forces will encourage the executor, personal representative or deceased's heirs to move quickly. But when the decedent is a defendant – especially a defendant with few assets or heirs – there is a powerful incentive for the heirs to notice the death for purposes of starting the Rule 25(a) clock, hoping for a dismissal 90 days later, but little incentive to do anything to expedite the process of appointing a representative for the decedent. Although the Second Circuit recognized the dilemma that plaintiffs face when their opponent dies, the court's proposed solution – seek an extension of time to substitute a personal representative for the defendant – does little to solve the problem. If a decedent defendant's heirs do not intend to seek appointment of a personal representative, even an indefinite extension of time to the plaintiff will not advance the case. Instead, the plaintiff will have to incur the time and expense of seeking appointment of a personal representative for the defendant (and then move to substitute that representative for the defendant), just to get the case back on track.

Requiring a deceased defendant to seek appointment of a personal representative before starting the Rule 25(a) clock – as the majority rule does -- confers both a benefit and a detriment

to both sides. It allows the defendant's heirs/estate the benefit of starting the Rule 25(a) clock, but it places on them the burden of seeking appointment of a representative for the deceased defendant in order to do so[3]; it ensures that the plaintiff will have a representative that can be substituted for the defendant, but it requires the plaintiff to move expeditiously to make that substitution before the Rule 25(a) clock expires. Accordingly, this Court finds that *Grandbouche* sets forth a fair and reasonable rule in cases such as this: for Mr. Kemper's suggestion of death to start the Rule 25(a) clock, it had to identify (and be served upon) Mr. Kemper's personal representative. Because it did not (and was not), the Court agrees with Mr. Hamilton that the dismissal of this action under Rule 25(a) was premature.

But that does not end the analysis. As the Court noted in its prior order, Mr. Hamilton's decision to seek to substitute Commerce for Mr. Kemper (rather than a traditional personal representative) sends this case off on a trajectory that makes all of the preceding discussion irrelevant. In ordinary circumstances, a plaintiff commences suit against a defendant in order to reach the defendant's assets; when a defendant dies, the substitution of the defendant's personal representative allows the plaintiff to continue going after those same assets. Because the operative facts and claims are not altered by the substitution, the claims against the representative of the deceased defendant will "relate back" under Fed. R. Civ. P. 15(c) and enjoy the suit's original commencement date for limitations purposes. But here, by seeking to substitute Commerce for Mr. Kemper, Mr. Hamilton seems to be indicating that he no longer intends to reach Mr. Kemper's assets, and is now interested in seeking the assets of a brand-new party, Commerce. As the Court previously explained, any claims Mr. Hamilton might assert

---

[3] Alternatively, the heirs of a deceased defendant might simply choose to do nothing. Although the Rule 25(a) clock does not begin to run, the litigation itself cannot meaningfully proceed either. This passivity will effectively require the plaintiff to seek appointment of a personal representative if the case is going to proceed.

against Commerce are conceptually different from the claims asserted against Mr. Kemper – they will sound in contract instead of tort and will arise from a different nucleus of operative facts. As such, it is unlikely that claims asserted against Commerce will relate back to the February 2016 filing date of Mr. Hamilton's original complaint, and will instead be governed by a limitations period measured from 2018. This makes reconsideration of the Court's prior dismissal of the claims against Mr. Kemper and substitution a curious course of action for Mr. Hamilton to pursue here: if substitution of Commercial under Rule 25(a) will nevertheless result in a limitations period measured from 2018, it would seem simpler for Mr. Hamilton to allow the dismissal of the claim against Mr. Kemper to remain and to commence a new lawsuit, appropriately conceptualized, against Commerce.

Nevertheless, it is not the Court's job to advise parties as to how to proceed. It is sufficient for this Court to grant Mr. Hamilton's motion to alter the judgment, insofar as the Court vacates its dismissal of this action on Rule 25(a) grounds and finds that the suggestion of death filed by Mr. Kemper has yet to start the Rule 25(a) clock running. However, the Court's prior rulings, denying Mr. Hamilton leave to substitute Commerce for Mr. Kemper and denying him leave to amend his complaint as proposed, remain. That leaves this case in a curious limbo, unable to meaningfully proceed unless and until someone decides to seek appointment of a personal representative for Mr. Kemper's estate such that Mr. Hamilton can then seek to substitute that representative in place of Mr. Kemper or unless and until Mr. Hamilton decides to instead pursue appropriately-pled claims against Commerce.

For the foregoing reasons, the Court **GRANTS** Mr. Hamilton's Motion to Alter Judgment **(# 55)**. The Court **VACATES** the Judgment **(# 50)** and that part of its January 30, 2018 Opinion and Order **(# 49)** that found Mr. Kemper's suggestion of death to have started the

7

Rule 25(a) time period. The Plaintiff shall have 90 days from the date of this order to take appropriate action so that this case can proceed, failing which it will be dismissed for failure to prosecute. The Clerk of the Court shall reopen this case.

Dated this 4th day of April, 2018.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge